[No. C061560. Third Dist. July 26, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTONIO DWAYNE MITCHELL, Defendant and Appellant.

## COUNSEL

Paul V. Carroll, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, David A. Rhodes and Daniel B. Bernstein, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**NICHOLSON, J.**—Defendant Antonio Dwayne Mitchell entered into a plea bargain and pleaded guilty to six of the 24 counts charged against him in return for a specific sentence. He appeals because part of the sentence to which he agreed is based on an enhancement with which he was never charged and which he did not admit committing. He asks us to reverse the judgment and allow him to withdraw his plea.

The Attorney General asserts defendant waived his right of appeal as part of his plea bargain. The Attorney General also contends defendant is estopped from challenging the trial court's action because he benefited from the plea bargain.

 We agree with defendant, and although we do not reverse the judgment, we modify the judgment by reducing his sentence and otherwise affirm. His purported waiver of his right to appeal was not knowing, intelligent, or voluntary. He also is not estopped from challenging the sentence, as he was sentenced for an enhancement which he did not commit, was not alleged against him, and to which he did not admit.

## PROCEDURAL BACKGROUND

In July 2007, an information charged defendant with 24 criminal counts committed between November 4, 2006, and March 13, 2007, as follows: five counts of aggravated kidnapping, two counts of first degree robbery, three counts of second degree robbery, four counts of first degree burglary, two counts of attempted first degree robbery, two counts of dissuading a witness by force, and one count each of child endangerment, false imprisonment, aggravated assault, receiving stolen property, attempted second degree robbery, and possession of cocaine. The information also alleged defendant personally used a firearm within the meaning of Penal Code section 12022.53, subdivision (b), in connection with several of the counts.[1] He faced several terms of life in prison. (§ 209, subd. (b)(1).)

In August 2007, defendant initially pleaded not guilty and denied the allegations. In March 2008, he rejected a proposed plea bargain that included a prison term of 20 years.

The day after jury trial began, defendant agreed to the following plea bargain: He would plead guilty to three counts of first degree robbery (§ 211), two counts of second degree robbery (§ 211), one count of dissuading a witness by force (§ 136.1, subd. (c)(1)), and he would admit the firearm allegations in three of those counts, all in return for a prison term of 34 years eight months.[2] The trial court also determined defendant waived his right to appeal as part of the agreement.

The trial court accepted the plea and sentenced defendant to consecutive prison terms totaling the agreed 34 years eight months, as follows: For the base term, the court sentenced him on one of the first degree robbery counts to a term of nine years, which is the upper term for robbery *in concert with* two or more other persons (§ 213, subd. (a)(1)(A)), a sentence enhancement for first degree robbery which was neither alleged against him nor to which he admitted or pleaded.[3] The court also imposed an additional 10 years on that count for the firearm enhancement.

The court sentenced defendant on the remaining two first degree robbery counts to two years each (one-third the middle term for first degree robbery

---

[1] Further undesignated references to sections are to the Penal Code.

[2] As part of the bargain, one of the second degree robbery counts was changed to first degree robbery.

[3] The upper term for first degree robbery not committed in concert is six years. (§ 213, subd. (a)(1)(B).)

*in concert*).[4] It also added to each of these terms an additional three years four months for the firearm enhancement (one-third the middle term).

Finally, the court correctly sentenced defendant on the two second degree robbery counts to one year each (one-third the middle term), and on the dissuading witness count to three years (the middle term).

Although the information alleged defendant committed two of the admitted first degree robbery counts with one other person, it did not allege he committed any of the robbery counts with two or more persons, the number required for the robberies to qualify as robbery in concert. The information also did not specifically allege the robbery in concert enhancements, section 213, subdivision (a)(1)(A). No evidence presented at the preliminary hearing or recited in the probation report established robbery in concert. On accepting defendant's plea, the trial court made no factual findings that could support an enhancement for robbery in concert.

Had the court sentenced defendant without applying the enhancement for first degree robbery *in concert* but instead applied one upper and two one-third the middle terms for the three first degree robberies not in concert, defendant's sentence would have totaled 30 years four months, a difference of four years four months.

Defendant obtained a certificate of probable cause and now appeals his sentence. He claims his sentence should be corrected or he should be allowed to withdraw his guilty plea because he was sentenced for enhancements that were not alleged or admitted or that had no factual basis. He also claims he did not waive his right to appeal.

## DISCUSSION

### I

### *Waiver of Right to Appeal*

The Attorney General contends defendant expressly waived his right to appeal as part of the plea bargain and cannot challenge the sentencing error. Defendant asserts his waiver was not knowing, intelligent and voluntary or, if valid, does not bar this appeal. We conclude the waiver was invalid.

A. *Additional background information*

After defendant pleaded guilty, the prosecutor raised the issue of defendant waiving his right to appeal for the first time. After some discussion, defendant

---

[4] One-third the middle term of first degree robbery not in concert is one year four months. (§ 213, subd. (a)(1)(B).)

stated he would waive his right, and the trial court accepted the waiver. The discussion proceeded as follows:

"[PROSECUTOR]: And one other thing, I'd ask that he expressly waive any irregularities with the information, or any procedures that we've done. No appeals, no writs. This ends the matter.

"[DEFENSE COUNSEL]: Well, I don't know if we necessarily—because we didn't agree to waive any appeals, and I haven't spoken to him about that. We will waive the irregularities because we did stipulate to the amendment of the complaint. But I don't know that I can necessarily—

"[PROSECUTOR]: Well, we need to stop, then. Because I want to waive any appeal. I want it to be done. If we're going to resolve it, let's resolve it.

"THE COURT: You didn't have any 1538's in this, do you?

"[DEFENSE COUNSEL]: No. I filed all the motions I had. The thing is—okay. Let me put it this way: I don't think he can waive any appeals in competency issues. If he wants to appeal because he thinks I'm incompetent, I think he can still file that. But I'm not sure about that. That's why I'm reluctant to waive any appeals.

"THE COURT: You shouldn't let this hang up your plea, [defendant].

"THE DEFENDANT: What's going on, sir?

"[DEFENSE COUNSEL]: Perhaps the Court could explain it to him.

"THE COURT: He wants you to waive your right to an appeal on any issue. I don't see the issue. Normally you can appeal a denial of the 1538.5. You can't appeal a denial of a 995.

"Did you bring any other motions?

"[DEFENSE COUNSEL]: The *Miranda* motion, which the Court granted.

"THE COURT: Well, yeah. The *Miranda* motion I granted. And he—[the prosecutor] wants you to waive the right to raise those issues on appeal.

"Do you want time to talk to [your defense counsel]?

"THE DEFENDANT: I'll waive it.

"THE COURT: Very good. Right to appeal is waived. After you take him over, bring in the jurors.

"THE BAILIFF: Okay.

"THE COURT: I know it's a lot of time, [defendant], but I think you were wise in doing it.

"THE DEFENDANT: Thank you, Your Honor."

B. *Analysis*

■ To be enforceable, a defendant's waiver of the right to appeal must be knowing, intelligent, and voluntary. (*People v. Vargas* (1993) 13 Cal.App.4th 1653, 1659 [17 Cal.Rptr.2d 445] (*Vargas*).) "Waivers may be manifested either orally or in writing. [Citation.] The voluntariness of a waiver is a question of law which appellate courts review de novo. [Citation.]" (*People v. Panizzon* (1996) 13 Cal.4th 68, 80 [51 Cal.Rptr.2d 851, 913 P.2d 1061].)

■ Waiver is defined "as '[a]n intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver . . . must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and the conduct of the accused.' [Citation.]

" '[T]he valid waiver of a right presupposes an actual and demonstrable knowledge of the very right being waived. [Citations.]' [Citation.] It ' "[i]s the intelligent relinquishment of a known right after knowledge of the facts." [Citation.]' The burden is on the party claiming the existence of the waiver to prove it by evidence that does not leave the matter to speculation, and doubtful cases will be resolved against a waiver. [Citation.] The right of appeal should not be considered waived or abandoned except where the record clearly establishes it. [Citation.]" (*Vargas, supra*, 13 Cal.App.4th at p. 1662.)

The record before us does not clearly establish defendant knowingly, intelligently, and voluntarily waived his right to appeal. It is not clear defendant actually understood the right he was being asked to waive. No one took the time to explain the right to him. He certainly did not understand the right when he asked the court what was "going on." In response, the court did

not explain the right. It simply assumed defendant understood what it was, and it stated the prosecutor wanted him to waive his right to appeal on any issue. The court then confused the matter further by theorizing about what issues defendant might appeal, and telling him the prosecutor wanted him to waive his right to appeal "those issues." These facts do not establish an "intelligent relinquishment of a known right after knowledge of the facts."

It also is not clear the waiver was made voluntarily. It was not part of the original negotiated agreement, and thus was not an integral part of the plea at that time. The prosecutor raised it for the first time after defendant had already pleaded guilty. Although defense counsel expressed uncertainty and reluctance, the trial court exerted pressure by telling defendant he should not let this matter hang up his plea before he even understood the matter. The court also discouraged defendant by saying it did not see an issue on which defendant would appeal. The prosecutor's demand was tardy and a surprise to everyone. The court's pressure deprived defendant of a full opportunity to make the waiver on his own accord.

We thus conclude the waiver was invalid and turn to consider the merits of defendant's appeal and the Attorney General's defense.

## II

### Unauthorized Sentence and Estoppel

The Attorney General does not dispute that the trial court exceeded its jurisdiction when it imposed the enhanced sentence for first degree robbery in concert, an enhancement defendant never committed and which was never alleged against or admitted by him. Rather, the Attorney General claims it does not matter in this context, because defendant is estopped from challenging the sentencing error. He simply agreed to the specific sentence as part of the plea bargain very much to his benefit. We disagree and conclude the rule of estoppel relied upon by the Attorney General does not apply in this instance.

Generally, "[w]here the defendants have pleaded guilty in return for a *specified* sentence, appellate courts will not find error even though the trial court acted in excess of jurisdiction in reaching that figure, so long as the trial court did not lack *fundamental* jurisdiction. The rationale behind this policy is that defendants who have received the benefit of their bargain should not be allowed to trifle with the courts by attempting to better the bargain through the appellate process. [Citations.]" (*People v. Hester* (2000) 22 Cal.4th 290, 295 [92 Cal.Rptr.2d 641, 992 P.2d 569], original italics.)

However, a condition for applying estoppel is that the defendant admitted the specific crime or enhancement for which he was sentenced. In *People v. Ellis* (1987) 195 Cal.App.3d 334 [240 Cal.Rptr. 708] (*Ellis*), a case cited by the Attorney General, this court determined a defendant was estopped from attacking her admission in her plea bargain of, and the trial court's sentencing upon, a prior federal felony conviction as a serious felony under California law even though, as a matter of law, the prior did not qualify as such. We concluded the public's interest against allowing a defendant to admit a mislabeled prior federal felony conviction was outweighed in that instance by the public's interest in upholding the terms of the plea bargain.

Here, defendant did not admit to the robbery in concert enhancement at all. Thus, the public interest manifestly weighs most heavily against upholding the terms of the plea bargain. It is one thing for a defendant to plead guilty to a crime he knows he did not commit in order to implement a plea bargain. It is quite another for a court to sentence a defendant to a crime or enhancement of which he was never notified or charged and to which he did not admit or plead. Equally stunning, neither the prosecutor nor defense counsel caught the error.

*People v. Couch* (1996) 48 Cal.App.4th 1053 [56 Cal.Rptr.2d 220] (*Couch*), another case cited by the Attorney General, is similarly distinguishable. There, the defendant, as part of a plea bargain, admitted a prior felony conviction within the meaning of section 667, subdivisions (b) to (i). After the court sentenced him based on that admission, he filed an appeal without obtaining a certificate of probable cause and challenged the court's sentencing him under section 667. (*Couch, supra,* at pp. 1055–1056.) The Court of Appeal ruled the defendant was estopped from challenging his sentence: "The fact that a defendant has received a benefit in return for agreeing to accept a specified sentence is itself sufficient to estop that defendant from later seeking to *unfairly* supplement this benefit by mounting an appellate attack on the trial court's imposition of the specific sentence which the defendant agreed to accept." (*Id.* at p. 1057, italics added.)

As with the *Ellis* defendant, the *Couch* defendant's appeal of a conviction for a crime with which he had been charged and to which he had admitted established the type of trifling that courts have condemned. The *Couch* court stated the defendant was estopped because he obtained the benefit of a lesser sentence by accepting a plea bargain "for a specific term *which included an admission of a prior conviction allegation* . . . ." (*Couch, supra,* 48 Cal.App.4th at p. 1058, italics added.)

■ Here, of course, there is no admission or plea by defendant or an accusation against him alleging the robbery in concert enhancement on which he was sentenced. The due process clauses of the Fifth and Fourteenth Amendments require a defendant be given notice of the charges and enhancements against him. (*People v. Jones* (1990) 51 Cal.3d 294, 317 [270 Cal.Rptr. 611, 792 P.2d 643]; *People v. Hernandez* (1988) 46 Cal.3d 194, 208 [249 Cal.Rptr. 850, 757 P.2d 1013].) By sentencing defendant on an offense he did not commit, with which he was not charged, and which he did not admit, the court effectively imposed on him a waiver of his constitutional right to be given notice of the charges against him without informing him of that right or seeking an express waiver of it. In this circumstance, we conclude an appeal pursuant to a certificate of probable cause to rectify an error of this magnitude does not constitute trifling with the courts, and defendant is not estopped from seeking relief.

At the conclusion of oral argument and without our prompting, the Attorney General requested on behalf of the People that if we conclude a violation of due process has occurred, we modify the sentence to be what it would be for convictions of first degree robbery instead of first degree robbery in concert, and we otherwise affirm. Defense counsel did not object to this request, stating that if the record was corrected and the sentence so modified, defendant would have indeed received the benefit of his bargain.

■ Section 1260 vests in us the authority to take the action requested by the parties. Under that statute, a Court of Appeal hearing a felony appeal may "modify a judgment or order appealed from, or reduce the degree of the offense or attempted offense or the punishment imposed, and may set aside, affirm, or modify any or all of the proceedings subsequent to, or dependent upon, such judgment or order . . . ."

Pursuant to this authority, we modify defendant's sentence to be a total prison term of 30 years four months, based on the upper term of six years for one count of first degree robbery (§ 213, subd. (a)(1)(B)), and one-third the middle term, or one year four months, on each of the remaining two counts of first degree robbery (*ibid.*).

## DISPOSITION

Defendant's sentences on the three counts of first degree robbery are modified as follows: on count 3, the upper term of six years; and on counts 5

and 12, consecutive terms of one year four months (one-third the middle term) for each. In all other respects, the judgment is affirmed, resulting in a state prison term of 30 years four months. The superior court shall prepare an amended abstract of judgment and deliver it to California's Department of Corrections and Rehabilitation.

Raye, P. J., and Blease, J., concurred.

On August 18, 2011, the opinion was modified to read as printed above.